The next case are cases 20-3519 and 20-3553. Hannah Corbin v. Steak N Shake. Argument not to exceed 15 minutes per side. Good morning. Go for it. Good morning. May it please the court. My name is Monica Lacks. I'm an attorney with Ogletree Deacons representing Steak N Shake. I'd like to reserve three minutes for rebuttal, please. This case is or should be solely about the plaintiff, Hannah Corbin. What the jury believed Hannah Corbin experienced and at a maximum what Hannah Corbin knew about her friend Mattie Dean's experiences while Corbin was working for Steak N Shake. Instead, the case has evolved into one about Mattie Dean who overlapped with Corbin at Steak N Shake for less than three months. The district court's admission of unlimited testimony by Dean was contrary to the Sixth Circuit's decision in Hawkins v. Anheuser-Busch. It was highly prejudicial and it precipitated a domino effect, a chain of events that this court should remedy on appeal. Were you counsel below? I'm sorry? Were you counsel below? I was not. I did not try the case. Did Steak N Shake preserve that argument about the scope of this testimony? Absolutely. Okay. Yes. Steak N Shake filed a motion in limine to exclude Mattie Dean's testimony under Rule 401, 402, 403, citing Hawkins and objected again during the course of the trial. How about limiting the scope of it? Yes. Steak N Shake argued about the timing of Mattie Dean's testimony. The court recognized the application of Hawkins. The district court, after Corbin's counsel took voir dire in this case, the court actually went back and said, I'm going to go back to Chambers now. We'll take a recess and I'm going to look at the controlling case referencing Hawkins and then came back and asked Dean questions based on the Hawkins decision. Unfortunately, the district court did not go far enough in that questioning because it didn't ask Dean exactly when she told Corbin about her experiences. The court simply asked whether Dean told Corbin about the experiences. And all that I believe is on pages 1093 and 1094 of the court's decision on that issue. Ms. Lax, I think another interesting way to look at this is you're saying this case became a case about the other young woman that worked at Steak N Shake. But it seems to me that in your appeal, you really don't say much about what seems like pretty overwhelming proof about what happened to Ms. Corbin. So you're trying to change the case around to be that you're ignoring, it seems to me you're kind of ignoring all of the evidence of what happened to this young woman. You really don't dispute it from what I read. So you want to say that, gee, they were piling on. And this other information then colored the jury's verdict in some way, where frankly, I'd be interested in why it really wasn't, if error at all, it almost looks like harmless error in light of the proof that you don't dispute. Well, Your Honor, first, Steak N Shake did contest, of course, the facts with respect to Corbin. But giving the jury credit for its decision, we are only contesting the merits as to the admission of Mattie Dean's testimony and the exclusion of Steak N Shake's investigatory statements. And I'm asking you in a nutshell, why does it really matter in the final analysis? Well, it matters in large part not only because of the merits, but because there's a big difference between liability and reprehensibility. So even if the jury could find liability here based on the facts, the punitive damages element requires reprehensibility. And those are based on entirely different factors. And Dean's testimony was key to the punitive damages award. But even the reprehensibility issue is fact determined. And if the jury heard those facts and determined from the aggregate facts there that that amounted to or established reprehensibility, what's wrong with that? Because the facts that the jury heard were facts that should have been excluded from evidence, Judge Donaldson. Well, but on that, I mean, the trial judge has tremendous discretion on what facts come in, so long as they're relevant and they're probative and that they were not unfairly prejudicial. Would you say these were unfairly prejudicial? Well, they were because they were excludable from evidence under Hawkins. Hawkins expressly states that a plaintiff must have notice of what happened to a third party during the course of her employment. In this case, there was no evidence to that effect. But there's certainly a circumstantial evidence that a jury could believe because of them writing to work together and they worked the same shifts. And I know you say they didn't overlap that much, but apparently the jury didn't buy that. So there's certainly circumstantial evidence when she said I talked to her about everything that it included the freezer incident. Your Honor, I would disagree on that point to the extent that Dean, they overlapped for only three months. Dean said that the incident at trial, she said that it occurred sometime in March. But if you look at Dean's history then with Steak and Shake after that, her mother, she also testified that she told her mother immediately after the incident took place. Her mother posted something about it on Facebook. Apparently there was a reference to Steak and Shake serving raw chicken on Facebook and her mother posted something. That was in December of 2016. So according to Dean, the incident happened in March of 2016. Corbin's last shift was in the middle of March 2016. Her mother did not post that for nine months after until December of 2016. And then Corbin continued to work until July of 2017. So Corbin worked there. I understand you're making a lot of factual arguments, but are you saying it's factually impossible that they did this, that they talked about this while she was an employee? I'm not saying it's factually impossible. So if it's not factually impossible, then why, let's assume there is no direct evidence that she told her during the time that she was working. Let's just start with that assumption. Why isn't it appropriate for the jury to have believed inferentially that she must have told her? I believe it's improper for the jury to believe that and it was improper to admit that because Hawkins specifically requires evidence to that effect. Here, there was no evidence. There was no testimony. And if you look at Corbin's brief, I think it's very important. The word replete is replete in the brief. He, Corbin argues that, and I'm sorry, I'm talking about the word timely, excuse me. The word timely is replete in the brief that Dean timely told Corbin about these issues. Dean and Corbin timely confided in one another. And I would suggest, Your Honor, that the replete use of the word timely, in fact, suggests that it may have been untimely because there's simply no evidence of when Dean conveyed that information to Corbin. And that's important because it comes in not only Hawkins, but the Sixth Circuit has reiterated that decision in 2016 in Smith v. Rockton Services, 813 F3rd 298. So that's a very important point, Your Honor. And it goes to the difference between liability and reprehensibility, which is the punitive damages issue. So on punitive damages, the substantive due process argument seems kind of weak to me. I mean, in a situation where Congress has capped punitives at $300,000, I mean, that seems like something corporations should be quite grateful for. And to call that a substantive due process violation, in my view, gives substantive due process a bad name, although that's hard to make it worse. But I don't know. What's your answer to that? So I think, Judge Sutton, that yes, there's a cap. The cap suggests a maximum. As the Court of Appeal, the cap is essentially Congress's determination of a reasonable maximum for a company of that size. It doesn't suggest what is within the confines of due process below that $300,000 cap. If we look at the decisions in Cooper Industries and State Farm, they're very clear that the appellate court has jurisdiction over the application of law in these cases, that the decision-maker cannot substitute its own caprice for what the appellate court determines is the application of the factors under Gore. But, I mean, there's two guiding notice things. One, you know as a matter of notice it won't be more than $300,000. It could be up to $300,000. You still have the judge review. You can still ask the judge to say this is out of control. You've got to reduce this from $100,000 to $50,000. When you add all those things together, it just seems very strange to me that you still have some substantive due process limit lurking. But under Gore, the representative, the punitive damages award still has to have a rational relationship to the compensatory damages. And I don't believe that's the case here. And if Your Honor would look at, looks at the case in Kiddus v. Reed, which is the Sixth Circuit in that case, emphasized the importance of the Gore analysis, and including the ratio factor. So in Kiddus, and that was in October of, I'm sorry, late September of 2020. Have we ever found a substantive due process violation where there was a cap? The Sixth Circuit? I don't. Or the U.S. Supreme Court. Has the U.S. Supreme Court ever found one where there was a cap out there? To my knowledge, there has not been a Title VII case. No, any cap. I mean, any case as long as there's a cap. I don't know of one that came up before the Supreme Court. So I can't, to my knowledge they haven't. Or us. You don't know of a Sixth Circuit one either? Right. I think within the Sixth Circuit, I know in the, this is a district court case, but there was the district court case in Hawkins v. Center for Spinal Surgery, Middle District of Tennessee. So in this case, the ratio of the punitive damage as awards to the back pay and compensatory was like 38 to 1, and you're saying that's not rational. Of course, the jury looked at all of this in terms of the facts and their finding, and they set that amount. So what are you arguing would be rational? Is it a mathematical determination, a mathematical ratio? And if so, coupled with the Gore factors, how do we get there? What is it? Thank you, Your Honor. It is not necessarily a mathematical ratio, but there are outer boundaries of due process. And I think the court set those up and reinforced those in Kittis v. Reed last September, which was after we filed our principal brief. And what the outer boundaries are in the 4 to 1 area, but even where you have low damages, not nominal damages, because some of the nominal damages cases, the ratio factor falls out of it, but where you have relatively low damages in this case, low compensatory damages, that the outer boundaries should be no more than a 9 to 1 ratio. And that is the most that due process will permit, even when you have low compensatory damages, and even when you have high reprehensibility, which we argue is not present here regardless. But it seems to me that if you couch that against the purpose of punitive damages, which is to have a deterrent effect, are you in some way eviscerating that purpose of deterrence? Well, I think there are gradients of that purpose, right? And there still has to be that rational relationship to the compensatory damages, which in this case were $1,308. That's what the jury determined that Corbin was entitled to. And other courts, other circuits have in fact, in similar circumstances, with similar amounts of compensatory damages, reduced the court, in addition to the Hawkins v. Center for Spinal Surgery case, there are a few other cases. There was one, Thomas v. ISAR Financial, in our briefs. Three other cases that I would refer to the court. Rubenstein v. Tulane, 218 F. 3rd, 292. That was an award of $2,500 in compensatory damages and $75,000 in punitive, 30 to 1 ratio. And relying on the Gore factors Ms. Lacks, you're well over your time. So are those in your brief? Are those cases in your brief? They are not, but I can give you just the sites. Okay. Just why don't you do the sites and no parenthetical. Okay. So Rubenstein v. Tulane, 218 F. 3rd, 392. Mendez Matos v. The Municipality of Guaynabo, 557 F. 3rd, 36. And Ross v. Kansas City Power and Light, 293 F. 3rd, 1041. All right, thanks. You'll get your full rebuttal. We'll hear from the other side. Good morning, Your Honor. May it please the court, Anuel Acalino. The EEOC has two arguments as to punitive damages today. One is categorical, that every damage award underneath Title VII's caps is necessarily constitutional. And the second is, even if this court finds that the Gore factors should be applied in each case, the $50,000 award here satisfies due process. I'd like to circle back to some of Your Honor's questions about this case. This case is not about Matty Dean. The District Court's finding of vulnerability, which supports the reprehensibility factors at page 403 to 405, and the District Court found that there were 11 pieces of evidence that I counted to support a finding of vulnerability. So the walk-in freezer incident was just one piece of that. And if you look at the jury instruction, which is in the record, page ID 749, the jury was told that it couldn't punish, it couldn't use punitive damages to punish. The age of Hannah Corbin, barely 17, the graphic nature of the harassment here, perpetrated by adult males in the workplace with positions of higher authority. Of course, reprehensibility is just, a vulnerability is just one of the reprehensibility factors. There's five of them. They were all satisfied here in this case. And then, turning to our categorical argument, which is that every award under the caps is necessarily constitutional, the twin purposes of punitive damages are to punish and deter. The amount of the award has to be reasonable and rational in light of those goals. And the Supreme Court has said that it's particularly concerned in due process analysis about notice. Well, all of those concerns are satisfied by Title VII. Well, I agree with you on notice, but it's not the only concern. And we know that four to one is presumptively problematic, and not hard to get over four to one with a cap of 300,000. Respectfully, Your Honor, four to one, definitely the Supreme Court said that might mark the outer boundary. But the Supreme Court also said that in cases of egregious misconduct, the result in a small amount of economic damages or non-economic damage that is hard to quantify, a higher ratio might be permissible. As the district court found, this case fits exactly that mold. No, but we're shifting a little bit. You've got the categorical argument, which I think is really interesting, and I probably have an instinct you're right. But I don't know what to do with this four to one point, which has nothing to do with notice. And, right? I mean, if you have rate, if they're telling us in Gore, four to one is something you should look at carefully, you can have lots of four to one situations under 300,000, right? That's true, but the ratio analysis actually is a poor fit when you have a statutory cap as you do in- Well, I don't understand why that's so. That's true only if notice is the only thing we're worried about. Let me explain. Title seven has a combined cap of compensatory and punitive damages. So the ratio analysis contemplates something else. Under title seven, the less you get in compensatory, the more space there is to reach the limit of the caps for punitives and vice versa. So the ratio analysis doesn't make a whole lot of sense when Congress has chosen this cap. But what bothers me about your categorical argument is, let's assume in a case like this, there's vulnerability. It's a young, in this case, young, happened to be a woman and young 20 men that are harassing her. So let's say this happened one time and the jury awarded similar compensatory and back pay damages. You seem to be saying that for one incident of, and let's assume, expand my hypothetical, one incident not touching, vulgar language, you seem to be saying, as long as the jury comes in at 300,000 or less, no harm, no foul, and that you don't look at any other factors. And that just intuitively doesn't seem to be correct. It seems like you should be looking at what really happened in the degree and the knowledge of the employer, and that's gore. Your Honor, one comment wouldn't make for a case of intentional discrimination. So the punitive... How many would it have to have to be intentional? So that's a finding of... So let's say two. Okay. But when you get to punitive damages, you assume that the jury has already found liability, that there was discrimination. Right. And punitive damages are only available to a jury upon a finding of malice or reckless indifference. So as Kolstad acknowledged, punitive damages are reserved for the worst cases already. The most reprehensible cases are the ones where punitive damages are available. So once you've gotten there and the court does have a role in assuring that there's enough evidence to support malice and reckless indifference, and the other components of punitive damages, a managerial agent, an employer has a good faith defense, once you get through all of those requirements, then yes, in our categorical approach, we leave for the jury the determination of what amount of punitive damages is appropriate. There's nothing in the statute, nothing in the plain language of the statute that suggests there's a sliding scale of reprehensibility, reserving the highest damages for only the most egregious cases. All the statute says, the plain language of the statute, is that we cap the damages, we tether it to the number of employees that an employer has, and I think that's to assure that the award is not catastrophic and it is reasonable. I think I'm over my time. Okay. All right. Thank you. Thank you, Your Honors, and I'll use up some of my precious time to congratulate the clerks on being admitted. Congratulations for that. I think we have to start off with stare decisis. It's an expression that comes from the Latin maxim, stare decisis et non quita movere, which means to adhere to the decided cases and not disturb settled precedents. I think that all the judges on this panel have used that at various points, Judge Sutton and Herr and United Techs and Judge McKee and McBee and Judge Donald and Lee versus Willie, and the thing where it's coming up now with regard to punitive damages and asking about BMW is that BMW did not set a hard limit and say, you have to look at four to one. In Jeffries versus Wal-Mart, which is a Sixth Circuit case that falls under the stare decisis, this Court did say, despite a clear statement from the Supreme Court that a high ratio, even a breathtaking one of 500 to one, will not by itself offend constitutional due process. Wal-Mart has ignored all the other factors identified in BMW for assessing constitutional proprietary of punitive damages awards solely based upon the numbers. So therefore, there's precedent within this district requiring not to look just at that ratio but to allow, looking at the other factors under Gore, which the trial court should be granted its abuse of discretion on determining those things. There has been no argument here that there's an abuse of discretion. More importantly, with regard to the punitive damages issue, you have to remember that consent is required for remittitor. You have to consent to preserve your Seventh Amendment rights. We did not consent to any remittitor. The defendants opted not to move in the alternative for a new trial. They did not raise the request for a new trial below. Pursuant to the principle of party presentation, the Court could not sua sponte grant a new trial. They did not ask for a new trial on appeal. They waived any request for a new trial on appeal. So as a matter of simple procedure, remittitor couldn't have been granted because we didn't consent. I'll skip backwards a little bit to some of their arguments. I don't think that any of the admissibility arguments prevail. Staring Deceases, you know, argument's not raised below. They've changed their arguments like the sands in an hourglass. It shifts constantly and they have made new arguments repeatedly, not only on appeal in their appellate brief but also in their reply brief. They can't get past abuse of discretion. They can't get past the precedent requiring the evidence viewed in the light most favorable to us. When we're talking about an invited error doctrine, it's important to recall that they, after filing the motion to eliminate, they stipulated to a jury instruction that said whether the harassment is directed at more than one people in the work environment is relevant. So having stipulated that that evidence is relevant, they can't come back and then say, but you can't admit all of that evidence because some of it's egregious. Well, if you're putting somebody on notice of a serial harasser, the more egregious of the conduct you report puts them more on notice, which brings me to their citation of Hawkins. It doesn't make sense because when they're citing to Hawkins, what they're ignoring is that in this law and in this district, that evidence is admissible to also put the jury on, put the employer on notice that they're employing a serial harasser. And the fact that it has occurred and they've allowed it to continue to occur is relevant. And that goes not only to the liability, but it goes to reprehensibility. If they were aware of this freezer incident and allowed it to continue, which is undisputed, then the employer bears extra responsibility because they allowed a 16-year-old to get groped in a freezer and then allowed that person back on the floor, where he continued to do that. Which brings us to the harmless error doctrine. There was evidence of repeated horrible conduct. And as to their evidence, which they said was excluded in terms of investigatory statements, those weren't even marked as exhibits. They weren't admitted. If they weren't even marked as an exhibit and admitted, they're not even properly for this, before this Court, to consider. So having moved through that as quickly as possible, there's a couple points that I really want to get to today on the retaliation and on the attorney's fees. The critical thing on the retaliation is, can an adverse action be undone? What do you say about Corbin's deposition testimony on this point? On which point, Your Honor? Retaliation. Looks like she concedes. I mean, she says, I wouldn't say he necessarily, like, retaliated. That's not very helpful for... That was... Absolutely. When the question was posed to her, they were talking about a particular incident. Moreover, a plaintiff is not a judgment of whether the state of mind of another person as to what they did or how they did it. How many cases are there where we have retaliation that wins and the plaintiff said, I wasn't retaliated against? Well, Your Honor... I agree with you, the plaintiff isn't dispositive, but I'm also, as a practical matter, curious if it's ever happened. Yeah, I think that what you have is you had a 17-year-old girl who was being deposed and she was being asked about... 17-year-old plaintiffs who said I wasn't retaliated against and still got one retaliation claim. I understand that. But what my point is, is that when she was asking, when she was asked about a particular series of events and she's responding to a particular series of events, then that sense of retaliation, that I was not retaliated at that instance, can't be expanded to say I was never retaliated against. Mr. Spitz, what I really don't understand about the retaliation claim is even if you assume that when the employer, I think it was Simon, gets this electronic notice and takes her off the schedule, so let's assume he had some sort of retaliatory animus. She shows up, she talks to him, there was a heated exchange, but he puts her back on the schedule and he allows her to work and then she quits. So even if the retaliation claim was to proceed, where was she damaged in any way by that action? And Your Honor, I disagree with you a little bit on the facts. She didn't quit. She was never actually put back on the schedule. There was an offer... He allowed her to work that day. No, she didn't work that day. He allowed her to work, but she chose not to. Well, we have to understand the scope of it, which brings it down to a question of fact. At that point, both of the employer witnesses said she was no longer an employee, she was fired. And that brings me back to my initial question. Can you undo an adverse action? Oh, we've been caught. This might be a problem. Let's undo the adverse action and act as if it didn't happen. So it's undisputed she was terminated. And while a reinstatement can go to damages, I don't believe it can go to liability. Moreover, the offer... There's questions of facts as to whether that was a true offer. And that offer came within the context of putting Hannah Corbin in the same room with a woman who just threatened to physically assault her, who was also the mother of the harasser, and allowed that mother to say, you did things wrong, it's your fault, and then say, hey, but you want to come back and work with this woman. Why is it bad to say that you can undo an adverse action? That seems healthy. In other words, the employer rashly says, you're fired, I can't take it anymore. And the employee says, well, can I have one more try? I'm sorry, whatever, I'm having a bad morning. And the boss says, yeah, I'm sorry, I'm having a bad morning too. You're going to say the first thing was an adverse action you can't undo? How strange is that? Because it's a situational thing, and I agree, in the very outer bounds where you're putting that, where somebody just says, oh, I'm fired, no, just kidding. But that wasn't just what led to this. This sounds pretty close. It didn't sound like it was actually a firing. It sounds like it was miscommunication where it was clarified. But then she was harassed by the person who took her off the schedule, and it may. In the circumstances, it may. That's a different claim, isn't it? What? You say, and then she was harassed. But she was harassed as part of the attempt to come back to work. It wasn't just, oh, I'm sorry, I take it back. She was harassed as part of that and put in a room where she was sort of said, hey, do you really want this job? If you really want this job, we'll put you back on the schedule. And I think that's where it comes down to a jury question. And the facts, as we're discussing them, you're right. There are scenarios where the jury can go, okay, it really was a determination. I think the interesting part about this, and you don't have to answer this if you don't want, but it sounds to me like you did pretty darn well on behalf of this employee by this $50,000 punitive damage award, given that she really didn't have any other damages to speak of. And now what, you want to go back and try this case over and add in retaliation, and you think she's going to do even any better? Well, I think that, well, I don't think we try the case over. I think we try the retaliation component only. And I think the important thing is, is that the limitations on the economic damages come from the failure to have the retaliation claim in. The retaliation comes to why she didn't have a job. When we only have the sexual harassment component of it, there are real no economic damages, because it's predominantly emotional. It's probably what happened from there. The retaliation is a determination. The determination is not part of the hostile work environment claims. So the jury was denied the opportunity, pursuant to the jury instructions, to consider really what the long-term effect of her employment was. And based upon the instructions, that is an explanation for why the economic damages were so low in this factor. The last thing I'd like to talk about is the attorney's fees. I think that this comes in really important under stare decisis, is the fundamental principle of party presentation, which was recently affirmed as an important principle by the U.S. Supreme Court in Sinjin Smith. What I wanted to ask you about that, Mr. Spitz, is that the way you're presenting this claim is that you had a legitimate $575,000 attorney bill, or whatever it was, and you got cut to $92,000. You only get to that by this two-times multiplier, for which there seems to be virtually no support whatsoever under Judge Alito's opinion on a successful multiplier. We're not arguing about the multiplier. We're not appealing the multiplier. So you're really conceding, or at least you're understanding that what you really are reduced from was the $250,000, or whatever it was, down to $92,000, not the thing with the multiplier. No, that's correct. So why is it an abuse of discretion in a 10-page opinion detailing why you get $92,000 instead of $250,000? That just strikes me as a hard claim to make. Well, it's very important, because, and this Court is bound by stare decisis, as the U.S. Supreme Court said, that the district court could only consider the arguments that were in cutting our bills. They can't, the district courts cannot go off on its own and say, okay, well, let me see if I think this is reasonable. Well, I think this is reasonable. And that's what the trial court did. It ignored their brief. It took into account what it thought was reasonable. Why isn't that what the Court does as a practical matter under the Lodestar test? You're determining what's reasonable hours and times a reasonable rate. Because the Court is supposed to be passive under Syngin-Smith and say, I will consider what you, defense counsel, think is unreasonable and weigh that in. I think the U.S. Supreme Court has made that very clear. You found a single case on attorney fees where the Court of Appeals overturned a reduction in attorney fees because under this party representation argument you're making or whatever you call it, that it wasn't raised by the defendant? Well, to be fair, Syngin-Smith was decided in 2020. So it was decided and hasn't really had a lot of opportunity to be prepared to this circumstance. Fair enough. Counsel, you're pretty well over your time. So if you want to just give us a one sentence conclusion, that would be terrific. Yeah. Can I make one more quick point? I lost a little bit of time to the AOC. And if I could make one more quick point, I would appreciate it. The detailed billing requirement under Imawal is bound in this Court. Imawal said one word or two words. We'll read the decision. Thank you. Got it. Thank you. Your rebuttal. I'd like to address several points raised by the AOC's counsel as well as Mr. Spitz. First, Corbyn's counsel argues that this Court needs to review the punitive damages decision under an abuse of discretion standard. That is not correct. He references Mark Glassman in the brief. The guiding case, which Sixth Circuit obviously has recognized, is Cooper Industries v. Leatherman, which very clearly requires de novo review of punitive damages decisions when they are in the constitutional context, when a constitutional argument is raised, as is the case here. Second, the remittler argument. That just does not work under any of the Sixth Circuit case law. The plaintiff has an option of either agreeing to the remittler of punitive damages or agreeing to a new trial on the punitive damages issue. That's at most. There's actually case law for the proposition that, again, when we're dealing in the constitutional context, the remittler is not even discretionary on the part of the Court. It is incumbent on the Court to reduce the damages. It's not technically a remittler in the constitutional context. It's a reduction. And that's Ross v. Kansas City Power and Light and Johansson v. Combustion Engineering, 170 F. 3rd, 1320. Ross v. Kansas City Power and Light was in our brief. And in those cases, say, while the traditional remedy of remittler does require the plaintiff's consent in order to comport with the Seventh Amendment right to jury trial, the Court's mandatory review of the punitive damages award does not implicate the Seventh Amendment. Consent is not required in those cases. Jeffries v. Walmart, on which plaintiff relies for a stare decisis proposition, is a 2001 case. It was a two-to-one split decision. Judge Bell issued a vehement dissent in that case on this very issue. It has been subsumed by Clark v. Chrysler, Bach v. First Union National Bank, Bridgeport Music v. Combs, all of which are cited in our brief, and most recently by Kittis v. Reed, 976 F. 3rd, 708. As to the EEOC's argument, I agree. Some of the case law suggests that in the context of nominal damages, the punitive damages award can be higher. The ratio piece falls out. However, this was not a case with nominal damages. In fact, the jury received a nominal damages instruction in this case. The jury was expressly told that if it found liability but found that the plaintiff did not suffer damages, it was to issue a $1 damages award. The jury declined to apply that instruction. It contemplated this award. It was a calculated award of $1,383 that still needs to comport with the due process analysis. And on the jury instruction — So your time is up, so if you could very briefly conclude. Yes. The jury instruction —  Where do they see it? Is it in front of you? It's right over there. That's not in your line of sight. I'm in your line of sight. The time is up. Go ahead with a very brief conclusion. Yes. The jury instruction contemplated that only admissible evidence is before the jury. It's not the jury's job to apply Hawkins. It was the court's job to apply Hawkins and to exclude evidence that was not admissible under Hawkins. Thank you, Your Honor. Thank you. All right. Thank you to all three of you for your helpful briefs and arguments. Thank you to the EOC for your amicus participation. We always appreciate that. The case will be submitted and the clerk may begin the process of getting us teed up for the next case.